UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GONZA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:23-cv-395 |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| MISSION COMPETITION FITNESS | § | |
| EQUIPMENT LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Gonza LLC ("Neck Flex" or "Plaintiff"), by and through its attorneys, for its Complaint against Mission Competition Fitness Equipment LLC ("Iron Neck" or "Defendant"), hereby alleges upon information and belief to Defendant's actions and knowledge to its own actions as follows:

## I.    NATURE OF THE ACTION

1.    This is a patent infringement action arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, to end Defendant's infringement of Plaintiff's United States Patents No. 11,638,850 (the "'850 Patent) and No. 11,638,851 (the "'851 Patent, collectively, the "Patents-in-Suit"), copies of which are attached hereto as Exhibits A and B. Plaintiff seeks injunctive relief and monetary damages. This case is a follow-on to a prior action between the same parties, handled by Judge Albright in this court, *Gonza LLC v. Mission Competition Fitness Equipment LLC*, Civil Action No. 6:21-cv-00771.

## II.    PARTIES

2.     Plaintiff Gonza LLC is a limited liability company organized and existing under the laws of the Commonwealth of Virginia. Plaintiff, a veteran-owned small business, has a place of business at 21026 Gulick Mill Road, Leesburg, Virginia 20175.

3.     Plaintiff is the owner of the entire right, title, and interest of the Patents-in-Suit.

4.     Mission Competition Fitness Equipment LLC is a limited liability company organized and existing under the laws of the State of Texas with a place of business at 4111 Todd Lane, Suite 200, Austin, Texas, 78744.

5.     Defendant may be served through its registered agent Legalinc Corporate Services Inc., 10601 Clarence Drive, Suite 250, Frisco, Texas 75033.

6.     Defendant is registered to do business in the State of Texas and has been since October 12, 2015.

7.     Defendant conducts business operations within the Western District of Texas, including at its place of business at 4111 Todd Lane, Suite 200, Austin, Texas, 78744.

8.     Defendant has offices in the Western District of Texas where it develops, manufactures, sells, and/or markets infringing products under the "Iron Neck" brand, including offices in Austin, Texas. Defendant sells infringing products under the "Iron Neck" brand in the Western District of Texas.

### III.    JURISDICTION AND VENUE

9.     This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

10.    This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

11.    This Court has personal jurisdiction over Defendant because: Defendant is a

resident of the State of Texas and the Western District of Texas; Defendant has minimum contacts with the State of Texas and the Western District of Texas; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and the Western District of Texas, and sought the protection and benefit of the laws of the State of Texas by incorporating here; Defendant regularly conducts business in the State of Texas and the Western District of Texas; and Plaintiff's causes of action arise directly from Defendant's business and other activities in the State of Texas and the Western District of Texas. More specifically, Defendant makes, sells, uses, offers for sale, and advertises products under the "Iron Neck" brand that infringe the Patents-in-Suit in the State of Texas and the Western District of Texas, has infringed the Patents-in-Suit in the Western District of Texas, and solicits customers in the State of Texas and the Western District of Texas who purchase Defendant's products under the "Iron Neck" brand that infringe the Patents-in-Suit.

12.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) because Defendant is registered to do business in the State of Texas, resides in and has offices in the Western District of Texas, has committed acts of infringement including making and selling infringing products in the Western District of Texas, and has a regular and established place of business at 4111 Todd Lane, Suite 200, Austin, Texas, 78744.

### IV.    PLAINTIFF'S U.S. PATENTS 11,638,850 AND 11,638,851

13.    The '850 Patent, entitled "NECK EXERCISE DEVICE AND SYSTEM," was filed June 24, 2022, and duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 2, 2023, after a full and fair examination. The '850 Patent claims benefit through a chain of parent applications to U.S. Provisional application No. 14/477,827 filed on September 4, 2013.

14.     The '851 Patent, entitled "NECK EXERCISE DEVICE AND SYSTEM," was filed on October 25, 2022, and duly and legally issued by the USPTO on May 2, 2023, after a full and fair examination. The '851 Patent claims benefit through a chain of parent applications to U.S. Provisional application No. 14/477,827 filed on September 4, 2013.

15.     Plaintiff is the assignee and owner of all rights, title, and interest to the '850 and '851 Patents, including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and to seek equitable relief and recover past damages.

16.     Plaintiff is a manufacturer of exercise equipment operated by the inventors of the '850 and '851 Patents.

17.     At the time of invention, inventors of the Patents-in-Suit had an interest in neck exercise equipment but noticed that commonly used conventional neck exercise devices were too cumbersome to use and offered limited exercise options. '850 Patent, 1:25-33; '851 Patent, 1:27-35. For example, some traditional weightlifting head harnesses included a chain to attach the harness to one or more weights and attached to the head harness at two attachment points, but these devices provided limited mobility to their users. *Id*. Other commonly used devices such as 4-way neck machines or leather harnesses with dog ears had similar design flaws.

18.     Recognizing these flaws in existing neck exercise equipment, Plaintiff introduced a new line of improved neck exercise equipment under the "Neck Flex" brand. Plaintiff sought to improve upon the limited mobility of existing neck exercise equipment by combining an adjustable headband, a cranial strap, and multiple rotatable attachment rings disposed along the headband into a neck exercise device that provides improved neck exercises when used with resistance bands

attached to the rings[1]:



19.    Plaintiff's neck exercise equipment is an innovative design that utilizes multiple rotatable attachment members among other improvements to offer significantly improved mobility to its user.

20.    Plaintiff's innovative design provides numerous new neck training options.

21.    Plaintiff's Neck Flex was overwhelmingly well received and received numerous positive reviews.

22.    Since its introduction, the Neck Flex has been widely adopted by professional athletes. Neck Flex's customers and/or users include Jon Jones and Anthony Joshua of the UFC, Phil Daru, the University of North Carolina, units of the U.S. military, the Canadian special forces,

---

[1] See https://www.youtube.com/watch?v=prnaHeWUBAA

the Royal Australian Air Force, as well as professional rugby teams and NFL teams.

## IV.    PLAINTIFF'S PRIOR LAWSUIT

23.    In 2014, Plaintiff applied for U.S. Patent No. 11,007,405 (the "'405 Patent) to protect its innovative "Neck Flex" products. The '405 Patent issued on May 18, 2021, and is the parent of the '850 and '851 Patents.

24.    At least as of early 2021, Defendant manufactured, marketed, and sold neck exercise equipment, including the "Iron Neck Alpha Harness" that was identical to (1) Plaintiff's "Neck Flex" neck exercise device and (2) Plaintiff's invention as described and claimed by the '405 Patent.

25.    On July 28, 2021, to protect its innovative "Neck Flex" products, Plaintiff filed suit against Defendant in this Court alleging infringement of the '405 Patent.  The suit was assigned to Judge Albright under Civil Action No. 6:21-cv-00771.

26.    On December 1, 2021, Judge Albright issued an Order Granting a Preliminary Injunction finding that Defendant's "entrance in the market provided nothing more than a mere copy of the Neck Flex, but at a lower price" and enjoining Defendant from marketing or selling the "Iron Neck Alpha Harness."

27.    The Parties jointly stipulated to dismiss Plaintiff's claims concerning the '405 Patent with prejudice on July 26, 2022. Unfortunately, Defendant is once again infringing Plaintiff's patent rights as set forth in more detail below.

## IV.    DEFENDANT'S ACTS OF INFRINGEMENT

28.    Since the dismissal of Plaintiff's prior lawsuit, Defendant has continued to manufacture, market, and sell its "Iron Neck Alpha Harness" with minor changes in design that do not affect the functionality or use of the Alpha Harness. For example, the "Alpha Harness Plus"

as sold on May 1, 2023, omits a second cranial strap and a chin pad compared to the Alpha Harness accused of infringement in Plaintiff's earlier lawsuit.



29.     Defendant's "Iron Neck" branded products, including the "Alpha Harness Plus," infringe Plaintiff's '850 and '851 Patents.

## COUNT ONE – INFRINGEMENT OF THE '850 PATENT

30.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

31.     Defendant has infringed and continues to infringe Plaintiff's '850 Patent.

32.     In violation of 35 U.S.C. §§ 271 *et seq.*, Defendant directly infringes at least claim 15 of the '850 Patent by making, selling, using, and offering for sale apparatus within the scope of claim 15 of the '850 Patent.

33.     Exemplary infringing products include Defendant's "Iron Neck" branded products,

including but not limited to the Iron Neck Alpha Harness Plus, and all substantially similar products. Plaintiff names exemplary infringing products only to serve as notice of Defendant's infringement and reserves the right to name additional infringing products when learned by Plaintiff or revealed during discovery.

34.     Defendant's Iron Neck Alpha Harness Plus is a neck exercise device:

**DESCRIPTION**

With 4 side clips and 2 hanging clips, the Alpha Neck Training Harness allows for linear training both side to side and up and down. Made from durable, high strength materials, the head harness can be used to perform traditional weighted neck exercises as well as rotational movements utilizing bands.

35.     Defendant's Iron Neck Alpha Plus is a head harness having an adjustable headband including a headband adjustment member:



**About this item**

• NECK STRENGHT HARNESS: This neck training harness is designed to improve your neck strength with progressive weight lifting - neck harness offers a challenging neck workout for athletes

• NECK HARNESS KIT: Along with a neck exercise head harness, the neck training harness kit includes a 40 inch nylon strap and 2 strong metal carabiners for secure, reliable attachment.

• VERSATILE WORKOUT SYSTEM: Load up the neck weight harness your way - 4 side attachment and 2 'doggy ears' allow you to complete traditional weighted exercises, or clip to bands or a sled.

• STRONG & DURABLE: Made from soft webbing, and breathable neoprene, the comfortable neck training harness features reinforced stitching for durability, and extra strength D-rings.

• ONE SIZE FITS MOST: The head harness for neck workouts is finished with adjustable industrial hook and loop fasteners to fit most head sizes. The quick fastening strap holds your head in position

The adjustable headband has a circumferential length along a first axis and a width along a second axis perpendicular to the first axis:



36.    Defendant's Iron Neck Alpha Harness Plus has a first cranial strap having each end

attached to the adjustable headband:



37.    Defendant's Iron Neck Alpha Plus has an adjustable chin strap with a hook and

loop portion:



- ONE SIZE FITS MOST: The head
  harness for neck workouts is finished with
  adjustable industrial hook and loop
  fasteners to fit most head sizes. The quick
  fastening strap holds your head in
  position

38.    Defendant's Iron Neck Alpha Plus has a plurality of metal rings attached to the

adjustable headband:



The metal rings are attached to the adjustable headband in a vertical orientation parallel to the second axis and are configured to rotate about the vertical orientation parallel to the second axis:



The metal rings are attached to the adjustable headband with webbing stitched to the adjustable headband:



39.    Defendant intentionally induces and continues to induce infringement of the '850 Patent by its distributors, retailers, customers, end users, and third parties by advertising and promoting the assembly and/or use of infringing products through its websites, websites of third parties, advertisements, and social media channels. Defendant's advertising, product descriptions, manuals, videos, and other promotional and instructional materials instruct third parties to assemble and use infringing neck exercise devices, and third parties do so.

40.    Defendant contributes to the infringement of the '850 Patent by making, selling, and/or offering for sale components that are material to the claims of the '850 Patent. For example, Defendant makes and/or sells kits containing components and/or instructions which its customers use to assemble a complete infringing neck exercise device. Components made, sold, and offered for sale by Defendant are especially made or adapted to infringe the '850 Patent and have no substantial non-infringing use.

41.     Defendant's acts of infringement have been without authority and/or license from Plaintiff.

42.     As a result of Defendant's infringement of the '850 Patent, Plaintiff has suffered damages including, but not limited to, lost customer goodwill, sales, and profits.

43.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44.     Defendant's infringement of Plaintiff's '850 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT TWO – INFRINGEMENT OF THE '851 PATENT

45.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

46.     Defendant has infringed and continues to infringe Plaintiff's '851 Patent.

47.     In violation of 35 U.S.C. §§ 271 *et seq.*, Defendant directly infringes at least claim 1 of the '851 Patent by making, selling, using, and offering for sale apparatus within the scope of claim 1 of the '851 Patent.

48.     Exemplary infringing products include Defendant's "Iron Neck" branded products, including but not limited to the Iron Neck Alpha Harness Plus, and all substantially similar products. Plaintiff names exemplary infringing products only to serve as notice of Defendant's infringement and reserves the right to name additional infringing products when learned by Plaintiff or revealed during discovery.

49.    Defendant's Iron Neck Alpha Harness Plus is a neck exercise device:

**DESCRIPTION**

With 4 side clips and 2 hanging clips, the Alpha Neck Training Harness allows for linear training both side to side and up and down. Made from durable, high strength materials, the head harness can be used to perform traditional weighted neck exercises as well as rotational movements utilizing bands.

50.    Defendant's Iron Neck Alpha Plus is a head harness having an adjustable headband including a headband adjustment member ("adjustable industrial hook and loop fasteners"):



About this item

- NECK STRENGHT HARNESS: This neck training harness is designed to improve your neck strength with progressive weight lifting - neck harness offers a challenging neck workout for athletes
- NECK HARNESS KIT: Along with a neck exercise head harness, the neck training harness kit includes a 40 inch nylon strap and 2 strong metal carabiners for secure, reliable attachment.
- VERSATILE WORKOUT SYSTEM: Load up the neck weight harness your way - 4 side attachment and 2 'doggy ears' allow you to complete traditional weighted exercises, or clip to bands or a sled.
- STRONG & DURABLE: Made from soft webbing, and breathable neoprene, the comfortable neck training harness features reinforced stitching for durability, and extra strength D-rings
- ONE SIZE FITS MOST: The head harness for neck workouts is finished with adjustable industrial hook and loop fasteners to fit most head sizes. The quick fastening strap holds your head in position

The adjustable headband has a circumferential length along a first axis and a width along a second axis perpendicular to the first axis:



51.    Defendant's Iron Neck Alpha Harness Plus has a first cranial strap having each end

attached to the adjustable headband:



52.    Defendant's Iron Neck Alpha Plus has a chin strap:



53.    Defendant's Iron Neck Alpha Plus has a plurality of metal D-rings attached to the

adjustable headband:



The metal D-rings are attached to the headband in a vertical orientation parallel to the second axis and are configured to rotate about the vertical orientation parallel to the second axis:



The metal D-rings are attached to the adjustable headband with webbing stitched to the adjustable headband:



54.    Defendant intentionally induces and continues to induce infringement of the '851 Patent by its distributors, retailers, customers, end users, and third parties by advertising and promoting the assembly and/or use of infringing products through its websites, websites of third parties, advertisements, and social media channels. Defendant's advertising, product descriptions, manuals, videos, and other promotional and instructional materials instruct third parties to assemble and use infringing neck exercise devices, and third parties do so.

55.    Defendant contributes to the infringement of the '851 Patent by making, selling, and/or offering for sale components that are material to the claims of the '851 Patent. For example, Defendant makes and/or sells kits containing components and/or instructions which its customers use to assemble a complete infringing neck exercise device. Components made, sold, and offered for sale by Defendant are especially made or adapted to infringe the '851 Patent and have no substantial non-infringing use.

56.     Defendant's acts of infringement have been without authority and/or license from Plaintiff.

57.     As a result of Defendant's infringement of the '851 Patent, Plaintiff has suffered damages including, but not limited to, lost customer goodwill, sales, and profits.

58.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.     Defendant's infringement of Plaintiff's '851 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## V.     JURY DEMAND

60. Plaintiff demands a trial by jury on all issues so triable.

## VI.     PRAYER FOR RELIEF

61. Plaintiff Gonza LLC respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

    A.  an adjudication that Defendant has directly infringed, either literally and/or under the doctrine of equivalents, one or more claims of the Patents-in-Suit;

    B.  an adjudication that Defendant has indirectly infringed, induced infringement of, or contributed to the infringement of the Patents-in-Suit;

    C.  an adjudication that Defendant has willfully infringed one or more claims of the Patents-in-Suit;

    D.  an award of damages to be paid by Defendant adequate to compensate Plaintiff for

Defendant's past infringement of the Patents-in-Suit, including pre-judgment and post-judgment interest, lost profits, costs, expenses, an accounting of all infringing acts, and an ongoing royalty for continued infringement;

E.  preliminarily and permanently enjoin Defendant pursuant to 35 U.S.C. § 283;

F.  that this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

G.  Any further relief that this Court deems just and proper.

Date: May 23, 2023                                    Respectfully submitted,

                                         By:   /s/ Minghui Yang
                                              Minghui Yang
                                              CARMICHAEL IP PLLC
                                              Texas State Bar No. 24091486
                                              8607 Westwood Center Drive
                                              Suite 270
                                              Tysons Corner, VA 22182
                                              Email: mitch@carmichaelip.com
                                              Phone: 703-646-9255

                                              *Attorney for Plaintiff*
                                              *Gonza LLC*